# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF SOUTH CAROLINA

| IN RE:<br><br>Christopher Allen Lents and Kimberly Dawn Lents,<br><br>Debtor(s). | C/A No. 21-01868-EG<br><br>Chapter 7<br><br>**ORDER ON DEBTORS' MOTION TO COMPEL ABANDONMENT AND TRUSTEE'S MOTION FOR TURNOVER** |
| --- | --- |

     **THIS MATTER** came before the Court for hearing on September 21, 2022 (the "Hearing"), to consider (1) Christopher Allen Lents and Kimberly Dawn Lents' (the "Debtors") *Motion to Compel Abandonment*[1] and Chapter 7 Trustee Michelle L. Vieira's (the "Trustee") Objection thereto,[2] and (2) the Trustee's *Motion for Turnover Against Debtor 2, Kimberly Dawn Lents, For Non-Exempt Property of Estate* ("Motion for Turnover")[3] and the Debtors' Response thereto.[4]  The hearing was attended in person by Debtor Kimberly Dawn Lents, who is now known as Kimberly Dawn Spoljaric ("Ms. Spoljaric") and the Trustee, as well as their respective counsel. Debtor Christopher Allen Lents ("Mr. Lents") appeared by telephone.  Ms. Spoljaric and the Trustee testified, and the parties stipulated to the introduction of various documents into the record.[5]  Based on the pleadings, the arguments of counsel at the Hearing, and the evidence presented, the Court makes the following findings of fact and conclusions of law.

---

[1] ECF No. 55, filed July 22, 2022.
[2] ECF No. 64, filed Aug. 10, 2022.
[3] ECF No. 56, filed July 22, 2022.
[4] ECF No. 67, filed Aug. 10, 2022.
[5] The parties agreed to the introduction of various exhibits, including portions of the Debtors' schedules and other documents from the case docket; the Debtors' listing agreement for the sale of the House and other documents related to the closing; email correspondence between the Trustee and the Debtor's attorney; and portions of the Handbook for Chapter 7 Trustees effective October 1, 2012.  The Debtors attempted to introduce the loan history summary reflecting payments made on the House's mortgage from 2019 into evidence, but the Court sustained the Trustee's objection to that document being admitted as it could not be authenticated.

## FACTS AND PROCEDURAL HISTORY

1.    On July 16, 2021 (the "Petition Date"), the Debtors filed a voluntary petition for Chapter 7 relief accompanied by their schedules and statements of financial affairs.[6]  At the time of filing, the Debtors were living in and maintaining separate residences and filing separate tax returns.

2.    The Debtors listed two real properties on their Schedule A/B.  The first is a single-family home owned by both Debtors located at 458 Flat Rock Lane, Summerville, SC 29486 (the "House") where Mr. Lents resided at the time of filing.  The House was listed as having a value of $350,000.00.  At the Hearing, Ms. Spoljaric testified that the Debtors determined the value of the House by considering the estimated property value on Zillow.com, what comparable properties in the neighborhood were selling for at the time, and the opinion of a real estate agent the Debtors contacted.  The second is a condominium located at 5523 N. Ocean Blvd. #1209, Myrtle Beach, SC 29577 (the "Condominium") owned solely by Ms. Spoljaric, where she has been residing since before the Petition Date.   The Condominium was listed on the schedules as being worth $130,000.00.

3.    At the time of filing, both properties were encumbered by mortgages.  On Schedule D, the Debtors listed mortgages on the House totaling $332,114.55 and a mortgage on the Condominium of $109,998.34.  The Debtors later determined that the mortgage balance on the Condominium was $120,540.31, as the Debtors had not accounted for amounts owed due to a forbearance.[7]  According to the Debtors' estimates and figures they provided, as of the Petition Date, there was $17,885.45 in equity in the House and $9,459.69 in equity in the Condominium.

---

[6] ECF No. 1.

[7] In the Motion to Compel Abandonment, the Debtors noted that "[t]he outstanding mortgage balance listed in the original schedules did not include the arrearage owed as a result of a COVID-19 Forbearance" and stated that "the debtor obtained and submitted to the Trustee an updated payoff from First Citizens Bank showing the actual

4.    Ms. Spoljaric testified that even while they were married, she kept her finances separate from Mr. Lents, and the couple filed separate tax returns.  Mr. Lents made all mortgage payments on the House, where he resided, and otherwise paid for expenses related to its maintenance both before and after the Petition Date; however, according to her testimony, he did not make any payments or maintenance that came due for the Condominium.

5.    In Schedule C, Mr. Lents claimed a homestead exemption on the House in the amount of $63,237.50, and Ms. Spoljaric claimed a homestead exemption on the Condominium in the amount of $56,912.50; both exemptions were pursuant to S.C. Code Ann. § 15-41-30(A).[8]

6.    The Debtors' Statement of Financial Affairs for Individuals Filing for Bankruptcy (Official Form 107) ("SOFA") indicates they had previously operated RTLS Battery Management, LLC, a consulting firm, until May of 2021, and were operating a dog treat business by the name of Two Sisters Pet Barkery, LLC ("Two Sisters").  Ms. Spoljaric testified that she operated these businesses.  She further testified that she sometimes paid for business debts out of her personal bank account, and she regularly made personal expenditures out of the Two Sisters bank account.

7.    According to testimony presented at the Hearing, some information in the Debtors' schedules was inconsistent with the information in financial documents reviewed by the Trustee. For example, Schedule A/B reflects that the Debtors had no cash in their possession on the Petition Date and expressly stated neither of them carry cash.  In reviewing bank statements, however, the Trustee noticed, and Ms. Spoljaric acknowledged during her testimony, that several withdrawals

---

outstanding balance owed of $120,540.31."  *See* Motion to Compel Abandonment at fn. 1.  The Claims Register, however, reflects that First-Citizens Bank & Trust Company filed a claim on November 17, 2021, asserting a secured claim in the amount of $120,315.94.  *See* Proof of Claim 25-2.

[8] *See* Schedule C filed at ECF No. 1.  While Schedule C does not expressly indicate which Debtor is claiming each exemption, the Debtors' Motion to Compel Abandonment and the Trustee's Objection thereto indicate that Mr. Lents solely claimed the homestead exemption on the House and Ms. Spoljaric solely claimed the homestead exemption on the Condominium.  *See* Motion to Compel Abandonment, ¶¶ 6-7.  Such information was also confirmed in the arguments and testimony provided at the Hearing.

of cash were made from the bank accounts in the two weeks before the Petition Date totaling approximately $2,000.00. Ms. Spoljaric testified that she used the cash to pay creditors. However, in response to Part 3, Question 6 of the SOFA, which asks, "during the 90 days before you filed for bankruptcy, did you pay any creditor a total of $600.00 or more?," the Debtors only indicated a payment to OneMain Financial of $894.45.

8.    On the SOFA, the Debtors indicated Ms. Spoljaric received income from employment and operating a business of $197,550.69 in 2019, $11,305.89 in 2020, and $13,028.53 from January 1, 2021 until the Petition Date. According to the Trustee's testimony, the amount of income that Ms. Spoljaric represented she received from Two Sisters on her 2020 income tax return – which Ms. Spoljaric affirmed during her testimony – is inconsistent with bank records.

9.    On August 19, 2021, the Trustee examined the Debtors at the 11 U.S.C. § 341 meeting of creditors. The Trustee did not abandon any assets of the Debtors' estate at the conclusion of the meeting; rather, on the same day, she made an Entry of Further Action Required on the case docket, indicating she would hold the case open for 30 days "to obtain valuation of real estate."[9]

10.    On August 26, 2021, a week after the meeting of creditors was held, the Trustee filed a Notice of Assets and Request for Notice to Creditors. On the same day, the Court issued and served a Notice to File Proof of Claim Due to Recovery of Assets, setting November 26, 2021 as the deadline to file non-governmental claims and January 22, 2022 as the deadline for governmental claims.[10]

---

[9] In the Motion to Compel Abandonment, the Debtors asserted that at the § 341 meeting the Trustee indicated that she would the case open "to obtain a value on the Ocean Blvd. property" and that "[n]o mention was made of the Flat Rock property [(the House)] due to the lack of equity and its inconsequential value to the estate." Motion to Compel Abandonment at ¶ 8. At the Hearing, however, Ms. Spoljaric acknowledged that the Trustee stated at the § 341 meeting she wanted to have her real estate agent provide her with an opinion as to the value of both the House and the Condominium.
[10] ECF No. 23.

11.  Over the following week, the Trustee and Debtors' counsel corresponded via e-mail about a potential buyer for the Condominium, the value of the Condominium, the balance owed on the mortgage on the Condominium, additional exemptions available to Ms. Spoljaric, and  on August 30, 2021, the Trustee e-mailed Debtors' counsel stating that that if Ms. Spoljaric amended her exemptions to claim additional homestead and wildcard amounts "that should resolve the issue" (the "August 30 Email").   The Trustee testified that this Email was meant to convey that if Ms. Spoljaric claimed additional exemptions on the Condominium, the Trustee would not pursue a sale of the property because there would be negligible equity to distribute to creditors. When questioned at the Hearing, Ms. Spoljaric also agreed that the email only concerned the issue of selling the Condominium, not the House.

12.  On September 1, 2021, the Debtors filed an Amended Schedule C.[11] As with the original Schedule C, Mr. Lents claimed a homestead exemption of $63,237.50 for the House.  With respect to the Condominium, Ms. Spoljaric increased her claimed homestead exemption to $63,237.50 and claimed a wildcard exemption of $4,394.20. At the hearing, Ms. Spoljaric testified she understood she would not have been able to claim an exemption in the House in addition to the exemptions she claimed for the Condominium.

13.  On October 19, 2021, the Court entered an order granting a discharge under 11 U.S.C. § 727 to the Debtors (the "Discharge Order")[12] and served it on all parties in interest, including both Debtors at their respective addresses.

14.  The Discharge Order states: "A discharge under 11 USC § 727 is granted to: Christopher Allen Lents, Kimberly Dawn Lents" and "SEE THE BACK OF THIS ORDER FOR IMPORTANT INFORMATION." The first sentence on the back of the order states: "This order

---

[11] ECF No. 25.
[12] ECF No. 27.

does not close or dismiss the case…."  The back of the order further states: "Because the law is complicated, you should consult an attorney to determine the exact effect of the discharge in this case."  Despite the language in the Discharge Order, Ms. Spoljaric testified that she believed that receiving the discharge meant her bankruptcy case was "over with", but she did not realize that the case still needed to be closed.

15.  The Debtors divorced in the spring of 2022 and decided to sell the House and split the proceeds. On March 1, 2022, the Debtors signed a listing agreement with a real estate broker to sell the House.  On April 14, 2022, without notifying the Trustee or obtaining Court approval, the Debtors sold the House to a third party for $430,000.00.  The Closing Disclosure introduced into evidence reflects that Mr. Lents received $42,430.08 and Ms. Spoljaric received $40,676.66 (the "Disputed Proceeds") in net proceeds from the sale of the House.[13]  After the closing, Ms. Spoljaric received a refund of mortgage payments of $825.84 but did not disclose it to the Trustee.[14]

16.  While the Debtors did not tell their bankruptcy counsel about the sale of the House, Ms. Spoljaric testified that the Debtors told the real estate broker and the closing attorney about filing for bankruptcy relief, and relied on those professionals to determine the impact of the bankruptcy on the sale.  She further testified she did not rely on any conduct of the Trustee in determining it would be permissible to proceed with the sale of the House without Court approval.

17.  In a Homeowner's Affidavit executed in connection with obtaining title insurance for the sale, the Debtors represented under oath that they had not filed for bankruptcy and the House was not under the control of either a bankruptcy court or a bankruptcy trustee.  Ms. Spoljaric

---

[13] At closing, the first mortgage on the House in the amount of $298,288.87 and a second mortgage in the amount of $20,203.55 were paid off.  The closing costs, which totaled $28,135.50, included a real estate agent commission of $25,800.00.
[14] The Trustee also asserted Ms. Spoljaric received an escrow refund of $1,598.62, but Ms. Spoljaric testified she did not recall receiving such a refund.

testified she understood she was signing the affidavit under oath, but she did not understand at the time that her case had not yet closed.

18. The Trustee learned about the sale of the House on or about April 26, 2022 – 12 days after the closing – while performing a periodic review of her open cases. Upon this discovery, the Trustee sent an email marked high importance to the Debtors' counsel asking her to "advise [her] clients not to dispose of the funds." Ms. Spoljaric testified that Debtors' counsel did so advise the Debtors shortly thereafter. By that time, however, she had already spent most of the Disputed Proceeds and disregarded that advice of counsel as to the remainder. Ms. Spoljaric testified that she used the money to pay post-petition debts, including paying approximately $15,000.00 in medical bills and repaying her father for the Condominium mortgage and living expenses he had paid for her. She also testified repeatedly that, in her opinion, she has not done anything wrong because she thought the case was closed.

19. The Trustee testified that prior to learning about the sale of the House, neither the Debtors nor their counsel ever requested for any of their assets to be abandoned, nor did they ask the Court for such relief. Moreover, between the August 30 Email regarding resolving the issue related to the Condominium and the Trustee's discovery that the House had been sold, neither the Debtors nor their counsel ever inquired the Trustee or her attorney about the status of the case.

20. On July 22, 2022, the Debtors filed the Motion to Compel Abandonment, requesting that the Trustee abandon all property of the estate, including the Disputed Proceeds, and close the case. In support of their motion, the Debtors assert the House should have been abandoned by the Trustee at the § 341 meeting or following the Trustee's August 30 Email regarding the Condominium because the House had negligible equity and was of inconsequential value to the estate at that time. The Debtors further assert that they reasonably relied on the Trustee's silence

7

and inaction in selling the House and believed the case was completed. As a result, they argue the Trustee should be equitably estopped or barred by the doctrine of laches from obtaining the Disputed Proceeds as she has failed to expeditiously administer the estate and has deliberately held the case open to capture the post-petition appreciation of the House.

21.    In her Objection to the Motion to Compel Abandonment, the Trustee argues that the Debtors did not seek an order of abandonment prior to selling the House, and they cannot demonstrate that the Disputed Proceeds received by Ms. Spoljaric are burdensome or are of inconsequential value to the estate.

22.    Also on July 22, 2022, the Trustee filed the Motion for Turnover, requesting that the Court order Ms. Spoljaric to turn over the Disputed Proceeds as non-exempt property of the estate pursuant to 11 U.S.C. § 542(a). The Debtors filed a Response to the Motion, asserting the same points raised in the Motion to Compel Abandonment.

23.    The Debtors and the Trustee filed a Joint Statement of Dispute on September 8, 2022.[15]

24.    The Court held a hearing on these matters on September 21, 2022.  Because Ms. Spoljaric testified she has already spent the Disputed Proceeds, the Trustee made an oral request at the conclusion of the Hearing for a monetary judgment in the amount of the Disputed Proceeds.[16]

## DISCUSSION AND CONCLUSIONS OF LAW

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (E) and this Court may enter a final order.

---

[15] ECF No. 71.

[16] At the conclusion of the Hearing, the Trustee also requested that the mortgage and escrow refund she asserted Ms. Spoljaric received after the Closing be turned over, but subsequently withdrew that request. *See* ECF No. 76, filed Sept. 22, 2022.

The Court is presented with competing motions regarding the same property.  The Debtors' Motion to Compel Abandonment is governed by 11 U.S.C. § 554, which provides that "[o]n request of a party in interest and after notice and a hearing, the court may order the trustee to abandon any property of the estate *that is burdensome to the estate or that is of inconsequential value and benefit to the estate*." (emphasis added).  The Trustee's Motion for Turnover is governed by 11 U.S.C. § 542(a), which provides that "an entity. . .in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, *unless such property is of inconsequential value or benefit to the estate*." (emphasis added).

As is evident from the language of each statute, the resolution of both motions is determined by answering similar questions. First, there is the threshold question of whether the Disputed Proceeds are property of the estate. While there is no dispute that the House was property of the estate at the time of the sale or that it was never abandoned pursuant to § 554, the parties disagree on whether the Disputed Proceeds should be considered property of the estate subject to turnover. Second, if the Disputed Proceeds are property of the estate, it must be determined whether they are burdensome or are of inconsequential value and benefit to the estate.

The ultimate issue for resolution before the Court can be summarized as follows:  should the Disputed Proceeds from the Debtors' unauthorized sale of the House be turned over to the Trustee, or should the Court order the Trustee to abandon the Disputed Proceeds that would not otherwise have been available had the Trustee promptly closed the case soon after the meeting of creditors?  If the Disputed Proceeds are burdensome or are of inconsequential value and benefit to the estate, the scales would tip in favor of the Debtors' motion seeking abandonment of the assets;

if, on the other hand, the property has more than inconsequential value or is of benefit to the estate, the scales would tip in favor of the Trustee's request for turnover.  Accordingly, if the Debtors prevail on their Motion to Compel Abandonment, the Trustee's Motion for Turnover would be rendered moot.  To the extent the Debtors do not prevail on their motion, the Trustee's Motion for Turnover would then be considered along with the laches and equitable estoppel defenses the Debtors raise. For the reasons set forth below, the Court will deny the Debtors' Motion to Compel Abandonment and grant the Trustee's Motion for Turnover.

## I.      Disputed Proceeds Are Property of the Estate

In a chapter 7 case, upon the commencement of the bankruptcy case, all pre-petition property and interests become property of the estate to be administered by the chapter 7 trustee. 11 U.S.C. §§ 541, 704. Section 541(a)(1) and (6) of the Bankruptcy Code provide that the commencement of a bankruptcy case

> creates an estate. . .comprised of all the following property, wherever located and by whomever held:
>> (1) . . .all legal or equitable interests of the debtor in property as of the commencement of the case.
>> . . .
>> (6) Proceeds, product, offspring, rents, or profits of or from property of the estate, except such as are earnings from services performed by an individual debtor after the commencement of the case.

As is clear from the plain language of § 541(a)(6), "post-petition increases in equity do become part of the bankruptcy estate, as long as the equity isn't payment for post-petition services." *Coslow v. Reisz*, 811 F. App'x. 980, 983 (6th Cir. 2020) (citing *Wilson v. Rigby*, 909 F.3d 306, 309 (9th Cir. 2018); *In re Celentano*, No. 10-22833 NLW, 2012 WL 3867335, at *5 (Bankr. D.N.J. Sept. 6, 2012)); *see also In re Shipman*, 344 B.R. 493, 494-95 (Bankr. N.D.W. Va. 2006) ("Money received from the sale of property constitutes the proceeds of that property; consequently, when a Chapter 7 trustee sells property of the estate, the trustee is entitled to any

10

post-petition appreciation in value of the property.") ; *In re Paolella*, 85 B.R. 974, 977 (Bankr.
E.D. Pa. 1988) ("Because sale does not generally, if ever, occur simultaneously with formation of
a bankruptcy estate, § 541(a)(6) mandates that the estate receive the value of the property at the
time of the sale. This value may include appreciation or be enhanced by other circumstances
creating equity which occur postpetition.") (footnote and citations omitted).   Post-petition
increases in equity become part of the bankruptcy estate because the value of property—whether
attributable to market forces or the property's condition or location—is an attribute of the property
itself which is allocated according to the competing interests in the property. *In re Adams*, 641
B.R. 147, 152 (Bankr. W.D. Mich. 2022) ("Indeed, the right to benefit from the appreciation of
one's property is among the most valuable 'sticks' in the 'bundle of sticks'. . .Under § 541(a)(1)
and subject to § 541(a)(6), the Trustee (as the estate's representative) holds the appreciation
'stick.'").

The Disputed Proceeds, even if attributable to post-petition appreciation of the House, are
thus part of the Debtors' estate.  Ms. Spoljaric did not claim an exemption for her interest in the
House, nor could she, given she had already applied her homestead exemption to the
Condominium.  Accordingly, the Disputed Proceeds she received from the sale of the House are
non-exempt property of the estate.[17]

---

[17] Some courts have found that after conversion of a Chapter 13 case to one under Chapter 7, post-confirmation, pre-conversion proceeds from the sale of a debtor's home, including the appreciation that occurred after the chapter 13 petition was filed, should not be included in property of the Chapter 7 estate.  *See Rodriguez v. Barrera (In re Barrera)*, 22 F.4th 1217 (10th Cir. 2022); *In re Klein*, No. 17-19106-JGR, 2022 WL 3902822 (Bankr. D. Colo. Aug. 23, 2022). Other courts have held otherwise. *See, e.g., In re Goins*, 539 B.R. 510 (Bankr. E.D. Va. 2015). Those cases are distinguishable from the issue currently before the Court because upon confirmation of a chapter 13 plan – unlike in a chapter 7 case – all of the property of the estate vests in the debtor under 11 U.S.C. § 1327(b), unless otherwise provided for in the chapter 13 plan.

## II.        Chapter 7 Case Administration

To the extent there are valuable assets to administer, the primary role of the chapter 7 trustee is to "collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest." 11 U.S.C. § 704(a)(1).   "[T]he duty to close the estate expeditiously is the trustee's main duty. . .and overriding responsibility." *Yadkin Valley Bank & Trust Co. v. McGee (In re Hutchinson)*, 5 F.3d 750, 753 (4th Cir. 1993) (internal quotation marks and citations omitted). "In order to close an estate expeditiously, a bankruptcy trustee must expeditiously perform each task necessary to close the estate, including the liquidation of the estate." *Id.* at 753-54.[18] The requirement of expeditious conduct is not limited to the actual closing of the bankruptcy estate. *See id.*

Once the bankruptcy estate is created, a trustee has several choices in administering the assets:  sell the property pursuant to 11 U.S.C. § 363, abandon it pursuant to § 554, or dispose of it pursuant to §§ 724 or 725.  *Prime Lending II, LLC v. Buerge (In re Buerge)*, No. BAP KS-12-074, 2014 WL 1309694, at *1 (B.A.P. 10th Cir. Apr. 2, 2014).   In turn, a debtor can reclaim an interest in the property only if (a) the chapter 7 trustee abandons it pursuant to 11 U.S.C. § 554(a), (b) the debtor seeks to compel abandonment of the property pursuant to 11 U.S.C. § 554(b), (c) the property is exempt pursuant to 11 U.S.C. § 522, or (d) the case is dismissed.

In a chapter 7 bankruptcy case, the trustee is the only party who may obtain Court authority to sell property of the estate.  *In re Mejia*, 576 B.R. 464, 468 (Bankr. S.D.N.Y. 2017) ("[C]hapter 7 does not authorize chapter 7 debtors to sell property of the bankruptcy estate. The only provision

---

[18] At the Hearing, Debtors' counsel requested that the Court take judicial notice of the United States Trustee's Handbook for Chapter 7 Trustees, which notes, among other things, that "[d]elays in case closure diminish the return to creditors, undermine the creditors' and public's confidence in the bankruptcy system, increase the trustee's exposure to liability, raise the costs of administration, and. . .  give rise to public criticism of the bankruptcy process." U.S. Department of Justice, Executive Office for United States Trustees, Handbook for Chapter 7 Trustees at 4-26 (2012).

of the Bankruptcy Code authorizing the sale of property of chapter 7 bankruptcy estates [(11 U.S.C. § 363)] empowers the Trustee to sell that property."); *see also In re Ellis*, No. 10-16998, 2014 WL 1725810, at *3 (Bankr. S.D. Ind. Apr. 30, 2014) ("The chapter 7 debtor must truthfully disclose assets and liabilities and must cooperate with the trustee, but a chapter 7 debtor has little authority over the administration of the bankruptcy estate or the liquidation of property of the estate.").

Here, as the testimony and the record reflect, the Trustee has not abandoned any of the estate's property.  To the contrary, shortly after the meeting of creditors, the Trustee filed a notice of assets and set a bar date for claims to be filed.  Less than seven months after the meeting of creditors—and a little over three months from the deadline for general claims and a couple of weeks after the deadline for governmental claims—the Debtors entered into a listing agreement to sell the House and ultimately closed on the sale without first seeking or obtaining the abandonment of the House or Court approval to sell it.  The Debtors claim they were under the impression the case was closed when they received notice of the Discharge Order; however, the order itself expressly states that the case was not closed and recommended that the Debtors consult with their attorney to determine the exact effect of the discharge.  Instead, the Debtors proceeded with the sale while the case was – and still is – open, without ever discussing their intent with their bankruptcy counsel or inquiring of the Trustee about the status of the case or the Trustee's intention as to the House or other assets.  Even after being notified that the Trustee asserted the funds were property of the estate and should not be spent, Ms. Spoljaric spent what little remained of the Disputed Proceeds.  Despite engaging in an unauthorized sale of property of the estate, Ms. Spoljaric now seeks to have the Disputed Proceeds deemed abandoned and requests that the Court compel the Chapter 7 Trustee to abandon all other property of the estate.[19]

---

[19] The Court notes that Ms. Spoljaric's spending of the Disputed Proceeds after being notified by her counsel that the Trustee asserted the proceeds were property of the estate and should not be spent calls into question whether her

### III.    Motion to Compel Abandonment

The Debtors, as the party seeking abandonment, bear the burden of proving by a preponderance of the evidence that the property has no greater than inconsequential value and is of no benefit to the estate. *In re Burgio*, 441 B.R. 218, 220 (Bankr. W.D.N.Y. 2010).  "The party seeking to compel the trustee to abandon estate property bears the burden of establishing a *prima facie* case that the property is of inconsequential value and benefit to the estate." *Celentano*, 2012 WL 3867335, at *4 (internal quotation marks and citations omitted).  Such *prima facie* case may be rebutted if the Trustee shows that the estate has equity in the property. *Id.* (citations omitted). A trustee's decision whether to abandon property of the estate is discretionary. *Morgan v. K.C. Mach. & Tool Co. (In re K.C. Mach. & Tool Co.)*, 816 F.2d 238, 246 (6th Cir. 1987).  "An order compelling abandonment is the exception, not the rule.  Abandonment should only be compelled in order to help the creditors by assuring some benefit in the administration of each asset." *Id.* Generally, abandonment should not be ordered where the benefit of administering the asset exceeds the cost of doing so, and "[a]bsent an attempt by the trustee to churn property worthless to the estate just to increase fees, abandonment should very rarely be ordered." *Id.*

Section 554 provides the exclusive means by which property of the estate can be abandoned.  *In re Schoenewerk*, 304 B.R. 59, 62 (Bankr. E.D.N.Y. 2003) ("[T]he plain language of the Code. . .requires either an affirmative act of the trustee to abandon an asset of the estate under subsection (a) or an implied act of the trustee to abandon an asset that is not administered, which becomes effective only upon the closing of the case.").[20]  Whether property of the estate is

---

discharge may be subject to revocation under 11 U.S.C. § 727(d)(2).  The issue, however, is not before the Court nor is the Court making any findings or drawing any conclusions.

[20] Section 554(d) of the Bankruptcy Code clarifies that "property of the estate that is not abandoned under this section and that is not administered in the case remains property of the estate," unless the Court orders otherwise.

burdensome or is of inconsequential value and benefit to the estate is measured at the time the abandonment motion comes before the Court, as § 554(b) provides "the court may order the trustee to abandon any property of the estate that *is* burdensome to the estate or that *is* of inconsequential value and benefit to the estate." *Coslow*, 811 F. App'x. at 984; *see also Celentano*, 2012 WL 3867335, at *4-5 ("Even when the identification of an estate interest is fixed as of the date of bankruptcy filing, its value to the estate may fluctuate during the period of estate administration. . .Section 554(b) looks generally to value for the estate, without focus upon the immediacy of any return.") (quoting *In re Siegel*, 204 B.R. 6, 8 (Bankr. W.D.N.Y. 1996)).

The Debtors waited three months after they sold the House to move for the abandonment of assets. Through the Motion to Compel Abandonment they are not asking for "permission;" rather, they are requesting "forgiveness" for the unauthorized acts that have already taken place. The Debtors have not met their burden of proof and have not established a *prima facie* case that the property is of inconsequential value or no benefit to the estate.  The Disputed Proceeds have value in the amount of $40,676.66 – which is certainly far from being insignificant. The Debtors cannot reasonably maintain that the Disputed Proceeds are burdensome or of inconsequential value to the estate. According to the Trustee, the total amount of unsecured claims filed against Ms. Spoljaric is approximately $51,000.00; therefore, the estate's acquisition of funds in the amount of $40,676.66 would allow for a significant distribution to the Ms. Spoljaric's creditors.  For these reasons, the Court denies the Debtors' Motion to Compel Abandonment.

### IV.    Motion for Turnover

In light of the denial of the Debtors' Motion to Compel Abandonment, the Court next considers the Trustee's Motion for Turnover, along with the defenses of equitable estoppel and laches that the Debtors raised.  The burden of proof in a turnover action brought under § 542(a)

lies with the party seeking turnover. *In re Vidis*, C/A No. 08-03242-DD, 2009 WL 9160051, at *3

(Bankr. D.S.C. Feb. 20, 2009) (citing *In re Gartman*, 372 B.R. 790, 795 (Bankr. D.S.C. 2007)).

To prevail, the Trustee must demonstrate, by a preponderance of the evidence, that "the property

in question (1) is presently, or was during the bankruptcy case, in the possession, custody, or

control of the Debtors; (2) can be used, sold, or leased in accordance with the provisions of § 363;

and (3) has more than inconsequential value to the estate." *In re Waggoner*, 622 B.R. 915, 921

(Bankr. D.N.M. 2020) (citing *In re Bailey*, 380 B.R. 486, 490 (B.A.P. 6th Cir. 2008) (citing cases)).

Once the Trustee presents a *prima facie* case for turnover, the burden of proof shifts to the Debtors

to demonstrate that the property is of inconsequential value and benefit to the estate. *Id.*   Based

on the findings of fact and conclusions of law set forth above, the Court finds that the Trustee has

met the burden on her Motion for Turnover.

The Court next addresses the Debtors' contention that the Trustee should be equitably

estopped or barred by the doctrine of laches from obtaining proceeds of the sale as she has failed

to expeditiously administer the estate and has deliberately held the case open to capture post-

petition appreciation of the House. "The doctrine of equitable estoppel allows a person's act,

conduct or silence when it is his duty to speak, to preclude him from asserting a right he otherwise

would have had against another who relied on that voluntary action." *First Union Com. Corp. v.*

*Nelson, Mullins, Riley & Scarborough (In re Varat Enters., Inc.)*, 81 F.3d 1310, 1317 (4th Cir.

1996) (internal quotation marks and citations omitted); *see also In re JK Harris & Co*., 512 B.R.

552, 560 (Bankr. D.S.C. 2012). "The doctrine applies in the bankruptcy context when four criteria

are met: (1) the party estopped knew the relevant facts; (2) the party estopped intended for its

conduct to be acted or relied upon, or the party acting had the right to believe the conduct was so

intended; (3) the party acting was ignorant of the true facts; and, (4) the party acting relied on the

16

conduct to its injury." *In re Russo-Chestnut*, 522 B.R. 148, 164 (Bankr. D.S.C. 2014) (citing *In re Varat Enters., Inc.*, 81 F.3d at 1317*) (citations omitted).

The doctrine of laches, in turn, can be asserted as a defense when there is "neglect to assert [a] right or claim which, taken together with lapse of time and other circumstances causing prejudice to adverse party, operates as [a] bar in [a] court of equity." *Ballard v. Thoennes (In re Thoennes)*, 536 B.R. 680, 693 (Bankr. D.S.C. 2015) (quoting *In re Kean*, 207 B.R. 118, 123 (Bankr. D.S.C. 1996) (internal quotation marks omitted)). "Laches is sustainable only on proof of both of two elements: (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense." *Id.* (quoting *Kean*, 207 B.R. at 123) (internal quotation marks omitted).

For these equitable defenses to apply, the Debtors must demonstrate that the Trustee failed to act in accordance with her statutory duties and that the delay and lack of correspondence by the Trustee regarding the status of the case reasonably led the Debtors to believe their case was closed and that they could dispose of assets that belonged to the estate as they wished.  At the outset, the Court notes that aside from a general requirement to act "expeditiously," neither § 704 nor any other authority of which the Court is aware imposes a particular deadline by which a chapter 7 trustee must liquidate assets or close the case.

In the Fourth Circuit, the applicable standard of care for a chapter 7 trustee is provided by § 704(a)(1):  The trustee is to liquidate the estate as expeditiously as is compatible with the best interests of parties in interest.  *Hutchinson v. McGee (In re Hutchinson)*, 5 F.3d 750, 754 (4th Cir. 1993).  The determination of whether the chapter 7 trustee has met this standard is made on a case-by-case basis. Even if the chapter 7 trustee does "not consistently pursue the estate's interests with the most dogged of dispatch, . . . ultimately that does not matter" to the debtor's obligations as a

petitioner in bankruptcy. *Seaver v. Markey (In re Markey)*, 378 B.R. 594, 602 (Bankr. D. Minn. 2007).

In *Hutchinson,* the chapter 7 debtor and mortgagee brought an action against the trustee alleging negligence in failing to expeditiously conduct a sale of assets.  The Fourth Circuit concluded that the chapter 7 trustee had not violated her duties under § 704 despite her delay of approximately eight months to accept and obtain court approval of an offer to purchase estate property.  *Hutchinson*, 5 F.3d at 757.  In that case, the debtors owned a dairy farm and shortly after the case was filed, they received an offer to purchase the farm from a prospective buyer. The debtors argued that the chapter 7 trustee failed to quickly accept and obtain court approval of the offer.  While the offer was pending, third parties entered the property and removed valuable milking and feeding equipment therefrom in violation of the automatic stay, resulting in the prospective buyer lowering his offer to an unacceptable price.  The property was released for foreclosure by the mortgage creditor and the amount ultimately recovered did not cover the full amount of the secured debt.

While recognizing that a trustee must expeditiously perform each task necessary to close a chapter 7 case, including liquidating assets of the estate, the Fourth Circuit noted that the trustee has a duty to act as expeditiously as is compatible with the interests of the debtors and the other interested parties.  *Id.* at 753-54.  The Court in *Hutchinson* found that the bankruptcy court did not err in concluding that the delay in administering the property was justified given the circumstances surrounding the sale, including the lack of cash for obtaining an appraisal, the interference of third parties in removing equipment from the property and resultant changes in the buyer's offer, and the difficulties in obtaining the required consent of the parties in interest to the sale.  *Id.*[21]

---

[21] The case of *In re Haugen*, No. 04-00034, 2008 WL 1995359 (Bankr. D. Haw. May 6, 2008), on the other hand, raised a similar issue in the context of determining the proper compensation to be awarded to the trustee at the final

In this case, the Court is unable to conclude that the delay was unreasonable.  The Court stresses the importance for a chapter 7 trustee to administer chapter 7 cases as quickly as possible to ensure a case is brought promptly across the finish line; otherwise, the case will have no end in sight, thwarting the very purpose of chapter 7 to provide the debtor a "fresh start."  The Trustee's delay of approximately six months from the date the Debtors received their discharge to take action to sell the House or pursue other assets was not a result of the Trustee neglecting her duties or allowing the case to sit idle with no action being taken.  The Trustee testified that once she determined there were potential assets to administer, she waited for the deadline for proofs of claim to pass to determine the total amount of claims against the estate and evaluate what assets should be pursued or liquidated. Among other things, she was considering whether a potential sale of the House would produce sufficient proceeds for a meaningful distribution to creditors.

The Trustee also noted there were several red flags in the case, including: (a) a drastic decrease and loss of income from 2019 to the following years, (b) the commingling of funds between business and personal accounts, (c) the use of personal funds to pay business obligations, and (d) the disorganized financial records that, as the Trustee stated, "were a mess . . . all over the place." When questioned specifically about why the case had not been closed shortly after the claims' deadline passed, the Trustee testified "there were just too many question marks for me to

---

report stage, and is an instructive example of a trustee failing to close the estate expeditiously.  In *Haugen*, the chapter 7 trustee did not perform any work on the case for more than six months after the § 341 meeting of creditors. *Id.* at *1. The debtor received her discharge and believing her discharge meant her case was closed, entered into a contract to sell her residence without notifying the chapter 7 trustee or seeking court approval of the sale. *Id.*  After learning about the sale, the chapter 7 trustee obtained court approval to sell the residence, the sale closed, and the trustee received the net proceeds via check promptly after the sale. *Id.* at *2. The chapter 7 trustee misplaced the check and did no work on the case for over fifteen months. *Id.*  Further delay in the administration of the case then resulted when the trustee hired an accountant to file tax returns in connection with the sale of the residence and gave the accountant six months to prepare a very simple set of returns. *Id.* The court in *Haugen* concluded that the trustee's delay of more than 15 months in cashing the check was harmful to creditors, who were deprived of the benefit of the use of those funds for that extended period, and to the debtor whose case was left open and neglected for an unreasonable period of time. *Id.* at *4.

feel good about just saying 'alright. . .investigation done, this case can close.'" For example, the Trustee noted several inconsistencies with Debtors' financial records and schedules, including the cash withdrawals prior to filing, and a proof of claim regarding a student loan for a dependent (when the Debtors had testified at the § 341 meeting that they had no dependents or children). In addition, she testified she has thus far identified three potential preference payments totaling around $2,000.00.

There is no evidence before the Court indicating that the Trustee was notified of an interested buyer for the House or other opportunities to recover funds for the estate and failed to act. There is no evidence that the House lost value as a result of the delay. To the contrary, the House appears to have increased in value during the time period at issue. "Often, a trustee will delay the liquidation of the estate in order to garner a higher price for an asset or other various reasons. All of this falls within his duty." *In re Poland*, 222 B.R. 371, 373 (Bankr. M.D. Fla. 1998). The Trustee is required to exercise her judgment to administer an asset as a fiduciary for the estate's creditors. *See In re Tubular Techs., LLC*, 372 B.R. 820, 823 (Bankr. D.S.C. 2007). Under the circumstances in this case, the interests of the Debtors' creditors in receiving the maximum equitable distribution from the proceeds of the sale of the House outweigh the Debtors' interest in a speedy closing of their bankruptcy case. The Court further observes that the Debtors do not appear to have been prejudiced by the Trustee's delay in administering the House. As of the Petition Date, there was $17,885.45 in equity in the House. Given that Ms. Spoljaric claimed a homestead exemption in the Condominium, she could not have claimed an exemption on her half interest in any equity resulting from any sale of the House—even if sold shortly after the filing.

Upon reviewing the applicable law and the record before it, the Court finds the balance of equities weighs in favor of the Trustee. The Debtor has failed to demonstrate the Trustee breached

her duty to collect and reduce to money the property of the estate and to close such estate as expeditiously as is compatible with the best interests of parties in interest, and therefore has failed to meet the elements for the doctrine of laches defense.  Moreover, the Trustee was not aware of the Debtors' intent to sell the House and only became aware of the sale upon her own review. There is no indication the Trustee intended the Debtors to act upon a mistaken belief that the case was closed and they could sell the House, nor can the Court discern any reason the Trustee would harbor such an intention. The Debtors have presented no evidence or argument that they had a right to believe the Trustee had such an intention.

The Debtors claim that due to the Trustee's silence during the months following the meeting of creditors and the Discharge Order being issued, they thought the case was closed. However, they cannot point fingers at the Trustee when the Discharge Order clearly indicated that their discharge did not equate to the case being closed, and when they did not attempt to consult with their bankruptcy counsel before proceeding with the sale.  While Ms. Spoljaric claims that she disclosed having filed bankruptcy to the closing attorney and real estate broker, she signed a document in connection with the closing falsely representing under oath that the Debtors had not filed for bankruptcy and the House was not under the control of either a bankruptcy court or a bankruptcy trustee.  Any reliance the Debtors placed on the lack of activity on the case docket in selling the House without Court approval was unreasonable, and any injury they suffer by forfeiting Ms. Spoljaric's proceeds resulted from their lack of diligence in filing a § 554(b) motion before selling the House.

Even if the Trustee did not pursue this case as quickly as she might have, that does not relieve the Debtors of their duties.  Accordingly, the Court will not bar the Trustee from prosecuting the Motion for Turnover on equitable grounds.  While the Court has denied the

Debtors' Motion to Compel Abandonment of all assets, the Court acknowledges the case has now been pending for a total of 15 months; accordingly, it expects the Trustee to continue actively liquidating and pursuing assets of the estate as necessary to finalize administration of the estate so this case may be closed.

<u>**CONCLUSION**</u>

For the reasons stated above, the Court finds that the Disputed Proceeds in the amount of $40,676.66 received by Ms. Spoljaric from the sale of the House are property of the estate, and turnover of those proceeds is appropriate under 11 U.S.C. § 542.  As Ms. Spoljaric testified at the Hearing, the Disputed Proceeds appear to have been spent; accordingly, if the Disputed Proceeds are not turnover over to the Trustee within 10 days from the entry of this Order, the Trustee will have a judgment in the amount of Disputed Proceeds not returned against Ms. Spoljaric. *See Markey*, 378 B.R. at 622 (ordering that in consequence of the debtor's post-petition conversion of property of the bankruptcy estate that was not allowed to her as exempt, the trustee would recover from the debtor the sum corresponding to the value of the assets).

[THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK]

**IT IS, THEREFORE, ORDERED:**

1. Debtors' Motion to Compel Abandonment is denied.

2. Chapter 7 Trustee Michelle L. Vieira's *Motion for Turnover Against Debtor 2, Kimberly Dawn Lents, For Non-Exempt Property of Estate* is granted.

3. To the extent that the Disputed Proceeds in the amount of $40,676.66 are not turned over to the Trustee within 10 days of the entry of this Order, upon the filing of an affidavit by the Trustee, the Trustee shall have a judgment against Debtor Kimberly Dawn Lents n/k/a Kimberly Dawn Spoljaric in the amount of $40,676.66.

**AND IT IS SO ORDERED.**

**FILED BY THE COURT**
**10/11/2022**



Elisabetta G. M. Gasparini
US Bankruptcy Judge
District of South Carolina

Entered: 10/11/2022

23